UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE CO., INC., AS INSURER OF ADMINASERVICE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANTIUS, INC., NEAL BERGSTROM, ROBERT STEVENS, CHARLES CAMBRA III, JONATHAN K. DRIGGS, AND WORKFORCE SOLUTIONS, INC.,<br><br>Defendants. | Civil No. 0411824 PBS |

**MEMORANDUM SUPPORTING MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER VENUE OF DEFENDANTS CHARLES R. CAMBRA III, JONATHAN K. DRIGGS, AND WORKFORCE SOLUTIONS, INC.**

Appearing specially and without consenting to jurisdiction in this Court, defendants Workforce Solutions, Inc., ("Workforce"), Charles R. Cambra III, and Jonathan K. Driggs (collectively the "Workforce Defendants") submit this memorandum in support of their motion to dismiss under Fed. R. Civ. P. 12(b)(2) and (6), and alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

In this lawsuit, plaintiff has brought claims not only against parties who were directly involved in transactions giving rise to alleged wrongdoing, but also against the Workforce Defendants who had no involvement in those transactions or wrongdoing. There is no legal or factual basis for holding the Workforce Defendants liable for the actions of defendants,

Advantius, Inc., ("Advantius"), Neal Bergstrom, and Robert Stevens (collectively the "Advantius Defendants").

For several reasons, the claims against the Workforce Defendants should be dismissed. First, because they lack minimum contacts with Massachusetts, claims against Cambra and Driggs should be dismissed for lack of personal jurisdiction. Second, claims against the Workforce Defendants should be dismissed because they had no involvement in the alleged wrongdoing at issue. Third, any claims against Workforce should be dismissed because Workforce is not an alter ego or successor of Advantius, which is the alleged wrongdoer and only real party defendant. Fourth, any non-intentional tort claim fails based on the economic loss rule.

Although dismissal as to all counts of the complaint is warranted, any surviving claim against one or more of the Workforce Defendants should be transferred to the District of Utah, because virtually all of the witnesses in this case are located in Utah.

## STATEMENT OF FACTS

1. Defendant Workforce Solutions, Inc., ("Workforce"), incorporated in Delaware in 1997, provides professional employer services, including human resource and benefit consulting services to its clients. Workforce's principal place of business is in Salt Lake City, Utah. Cambra Aff. ¶ 3.

2. Workforce has observed all corporate formalities. It conducts regular board meetings and shareholder meetings. It maintains its own accounts and financials. It files its own tax returns. It keeps its own books and other corporate records. Cambra Aff. ¶ 4.

3. Defendant Charles R. Cambra III ("Cambra"), a founder and the CEO of Workforce, resides in Salt Lake City, Utah. Cambra has never visited, conducted personal

2

business in, or otherwise made any contact with the Commonwealth of Massachusetts.  Cambra Aff. ¶ 2.

4.      Defendant Jonathan K. Driggs ("Driggs"), a member of the Utah State Bar, provides legal and other consulting services to Workforce.  Driggs resides in Pleasant Grove, Utah.  Other than a brief personal vacation in or about 1987, he has never visited Massachusetts.  He has never sought business from Massachusetts, developed Massachusetts business contacts, or otherwise engaged in any business activity in Massachusetts.  Driggs Aff. ¶ 2.

5.      Defendant Robert Stevens ("Stevens"), formerly an officer of Workforce, left Workforce along with some other former Workforce employees in or about June 2000 to form Advantius, a completely separate entity that engaged in administering employee benefits and payroll for Advantius clients.  Stevens and the employees that went with him to Advantius were never rehired by Workforce.  Cambra Aff. ¶ 5; Driggs Aff. ¶ 3.

6.      On behalf of Advantius, Stevens secured loans from Workforce to capitalize Advantius.  Advantius never repaid the loans.  Cambra Aff. ¶ 6.

7.      The operations of Advantius were controlled primarily by Stevens, the President and Chairman of Advantius, defendant Neal Bergstrom ("Bergstrom"), the Chief Executive Officer, and others.  Cambra Aff. ¶ 7; Driggs Aff. ¶ 4.

8.      For a short time after Advantius was incorporated, Driggs provided legal and consulting services to Advantius as an independent contractor, and received some stock in Advantius.  Driggs' services primarily involved human-resource-related consulting and training for Advantius clients—unrelated to Advantius payroll services—and occasionally drafting contracts with terms that were provided to him by Stevens or Bergstrom.  Driggs was not involved in any substantive negotiation of Advantius contracts.  Other than various discussions

3

with Advantius principals during the few months after Advantius was formed, Driggs was not involved in decision-making or operations of Advantius. Driggs Aff. ¶ 5.

9. Other than responding to two or three hours of employment-law-related inquiries, Driggs last provided services for Advantius on February 28, 2002. He had no further involvement in Advantius after that date, and his stock ownership in Advantius was later purchased by Stevens. Driggs Aff. ¶ 6.

10. Advantius began negotiating an agreement with AdminaSource in late 2001 or early 2002. Stevens and Bergstrom assigned to Driggs the responsibility of preparing some drafts of the agreement, using terms provided to him by Stevens and Bergstrom, who handled the contract negotiations with AdminaSource. Driggs Aff. ¶ 7.

11. The drafts prepared by Driggs contained two standard, boilerplate provisions that he typically included in contracts he drafted for Advantius: a Utah-based arbitration clause (§ 11.2) and Utah-based choice-of-law/consent-to-jurisdiction/forum-selection clause (§ 12.7). Driggs has no reason to believe that these provisions were ever modified or deleted before the agreement was executed. Driggs Aff. ¶ 8.

12. Driggs was not involved in any substantive contract negotiations or discussions with AdminaSource, did not participate in meetings with AdminaSource, and made no representations to AdminaSource. Driggs Aff. ¶ 9.

13. Neither Cambra nor Workforce has ever been involved in any transaction involving AdminaSource. Cambra Aff. ¶ 8.

14. For a few months after June 2000 when Advantius was formed, Cambra provided some limited consulting input to Advantius, but was not remunerated for his advice. By year-end 2000, Cambra had no involvement in Advantius. Cambra owned some stock in Advantius

4

for a period of time until it was purchased by Stevens, but Cambra never became involved in the control, decision-making, or operations of Advantius. Cambra Aff. ¶ 9.

15.   Cambra and Driggs have never been employees of Advantius. Cambra Aff. ¶ 10; Driggs Aff. ¶ 6.

16.   Neither Cambra nor Driggs participated in any Advantius decision making with respect to AdminaSource. Neither was involved in handling any funds for AdminaSource or AdminaSource's clients, including the funds of Sapers & Wallack Insurance Agency at issue in this case. Cambra Aff. ¶ 11; Driggs Aff. ¶ 9.

17.   Workforce has never succeeded to any rights of Advantius. Workforce has never assumed Advantius's liabilities, purchased Advantius contracts or assets, continued Advantius's business, merged with Advantius, or otherwise succeeded to any rights of Advantius. Workforce and Advantius have never commingled their accounts with each other. Cambra Aff. ¶ 12.

18.   On information and belief, Websource HR, a Utah limited liability company, purchased various client accounts from Advantius in about September 2003. Workforce has no affiliation whatsoever with Websource HR. Cambra Aff. ¶ 13; Driggs Aff. ¶ 10.

## ARGUMENT

**I.  CLAIMS AGAINST CAMBRA AND DRIGGS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

When personal jurisdiction is challenged, the plaintiff bears the burden of establishing that jurisdiction exists. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 975 F.Supp. 30, 37 (D. Mass. 1997). To obtain personal jurisdiction over a defendant, the plaintiff must prove each of the following: (1) the Massachusetts long-arm statute authorizes jurisdiction; (2) the defendant has sufficient minimum contacts so that the exercise of jurisdiction does not offend due process; and (3) the exercise of jurisdiction is reasonable, and therefore does not offend due process.

Noonan v. Winston Co., 135 F.3d 85, 89 (1st Cir. 1998). Because plaintiff has not met its burden on each of these alternative prongs, the Complaint should be dismissed as to Cambra and Driggs.

### A.   There Is No Basis for Jurisdiction Under the Long-Arm Statute.

Plaintiff merely alleges that "[t]his Court may exercise personal jurisdiction over the parties because the events which form the basis of the complaint occurred in Massachusetts." Complaint ¶ 9. Although not expressly asserted, it would appear that plaintiff is alleging that jurisdiction for its tort claims under Mass. Gen. Laws ch. 223A, § 3(c), which states, in relevant part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (c) causing tortious injury by an act or omission in this commonwealth." However, the Complaint is void of any factual allegations that Cambra or Driggs caused plaintiff's injuries by an act or omission in the Commonwealth. As a result, there is no long-arm-based ground for exercising personal jurisdiction over these two defendants.

### B.   Cambra and Driggs Have No Minimum Contacts with Massachusetts.

In this case, plaintiff has not and cannot plead any facts that show that Cambra and Driggs had sufficient minimum contacts that would subject them to the personal jurisdiction of this Court. To exercise specific jurisdiction,[1] the plaintiff's claims must "directly arise out of, or relate to the defendant's forum-state activities" and "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state." Foster-Miller, Inc. v. Babcock & Wilson Canada, 46 F.3d 138, 144 (1st Cir. 1995). Here,

---

[1] There can be no general jurisdiction unless the defendant's in-state activities are "substantial" or "continuous and systematic." Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Here, general jurisdiction is inappropriate because—as reflected in the complaint and addressed in this

6

however, Cambra and Driggs have no minimum contacts with Massachusetts at all, much less "related" contacts or contacts representing "purposeful availment." Id.

Cambra and Driggs have never conducted business or otherwise developed contacts here. [Statement of Facts ("SOF") ¶¶ 3–4.] Even had Cambra and Driggs made such contacts, the law requires that their contacts be <u>related</u> to the plaintiff's claims. Foster-Miller, 46 F.3d at 144; see also Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999) (holding that for tort claims, plaintiff must show sufficient "causal nexus" between defendant's contacts and plaintiff's causes of action). Moreover, Cambra and Driggs have not availed themselves of any benefit of this state's law, having never conducted business nor developed personal or business contacts here. [SOF ¶¶ 3–4.] As a result, there can be no personal jurisdiction and claims against these two defendants must be dismissed.

### C. Under the Circumstances, Personal Jurisdiction Would Be Unreasonable.

The Court should also dismiss on the ground that plaintiff has failed to show that jurisdiction would be "reasonable" under the Due Process Clause. This reasonableness prong of the personal jurisdiction analysis involves a balancing of the "gestalt" factors, which include:

> 1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Foster-Miller, 46 F.3d at 150. Several of these factors suggest that the claims against Cambra and Driggs should be dismissed. First, the burden on these two defendants who have no contact with Massachusetts is great. Litigation here will be costly, time-consuming, and inconvenient.

---

motion—Cambra and Driggs have no contacts with Massachusetts, much less contacts relating to the tortious conduct alleged in the Complaint.

Second, the Commonwealth has no greater interest in this case than Utah as none of the parties are from the Commonwealth. Plaintiff USLI is a Pennsylvania insurance company, and defendants are all Utah residents. Third, USLI's interest in obtaining relief is unaffected by proceeding in Utah rather than in Massachusetts, because USLI will be forced either way to litigate outside of its home state of Pennsylvania. Finally, it remains uncertain whether Massachusetts law even applies. Although plaintiff has not yet produced Advantius's contract with AdminaSource, a draft of the contract identifies Utah as the agreed-upon forum and choice of law pursuant to which the dispute is to be adjudicated.

In sum, plaintiff's claims against Cambra and Driggs cannot withstand any of the three alternative prongs of the three-part personal jurisdiction analysis. As a result, the Court should dismiss the claims against Cambra and Driggs.

## II.  THE CLAIMS AGAINST WORKFORCE SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NO ALTER EGO OR SUCCESSOR LIABILITY CLAIM.

The Complaint itself does not suggest, nor could it suggest, that Workforce had any involvement in the wrongful acts of the Advantius Defendants giving rise to plaintiff's alleged cause of action. Although the Complaint seeks to impose secondary liability on Workforce by alleging "upon information and belief" that there has been a "melding" or "intermingling" of Workforce and Advantius (Complaint ¶¶ 30–31), plaintiff fails to plead any basis whatsoever for alter ego or secondary liability, as no such basis exists. Therefore, plaintiff's Complaint against Workforce should be dismissed for failure to state a claim on which relief can be granted.

### A.  **The Complaint Should Be Dismissed Based on the Failure of Any Alter Ego Claim.**

Although suggesting alter ego liability as to the Workforce Defendants, plaintiff fails in its Complaint to allege any factual basis upon which such liability could exist. See Omni-Wave

8

Electronics Corp. v. Marshall Indus., 127 F.R.D. 644, 646 (D. Mass. 1989). Under Massachusetts law, the two elements of alter ego liability are as follows:

> First, the party must allege facts suggesting that representatives of one corporation exercise some type of pervasive control over the activities of another corporation; or that there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities. Second, the party must show that piercing of the corporate veil is necessary to defeat fraud or wrong or to prevent gross inequity.

NCR Credit Corp. v. Underground Camera, Inc., 581 F. Supp. 609, 612 (D. Mass. 1984) (citation and internal quotation omitted). Invoking the equitable doctrine of corporate disregard is reserved only for "those rare occasions in which these two conditions exist." Id.

Here, plaintiff has failed to plead the two prerequisite conditions for alter ego liability. Instead, plaintiff merely alleges "[u]pon information and belief" that "there has been an intermingling of these two entities and corporate formalities have not been properly followed." Complaint ¶ 31. This falls short of the first condition because plaintiff has not alleged, nor can it allege, that Workforce has exercised any pervasive control over Advantius; that the two companies are engaged in a common enterprise; or that there has been a "substantial disregard" of their separate nature. See NCR, 581 F. Supp. at 612. Likewise, as in both Omni-Wave and NCR, plaintiff has made no allegation that piercing the corporate veil is necessary here to defeat fraud or prevent gross inequity—the second condition of alter ego. See id.; Omni-Wave, 127 F.R.D. at 647–48. In short, plaintiff has not set forth any "facts which would demonstrate 'some fraudulent or injurious *consequence* of the intercorporate relationship' between [Advantius and Workforce]." Omni-Wave, 127 F.R.D. at 647 (quoting My Bread Baking Co. v. Cumberland Farms, 353 Mass. 614 (1968)).

Plaintiff cannot set forth a factual basis for alter ego liability. Workforce and Advantius are two separate legal entities, and all corporate formalities have been followed. [SOF ¶¶ 2, 5.] Workforce conducts regular board meetings and shareholder meetings, maintains its own accounts and financials, files its own tax returns, and keeps its own books and other corporate records. [SOF ¶ 2.] Workforce and Advantius have never commingled their accounts. [SOF ¶ 15.]. Therefore, plaintiff's Complaint against Workforce should be dismissed under Rule 12(b)(6).

### B. The Complaint Should Be Dismissed Because Plaintiff Has No Successor Liability Claim Against Workforce.

For similar reasons, Workforce is not secondarily liable to plaintiff as a successor. Successor liability is an exception to "[t]he general rule . . . that 'a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor.'" Santa Maria v. Owens-Illinois, Inc., 808 F.2d 848, 856 (1st Cir. 1986) (quoting Araserv, Inc. v. Bay State Harness Horse Racing and Breeding Ass'n, Inc., 437 F. Supp. 1083, 1089 (D. Mass. 1977). An exception is made to the general rule only when there is:

> (1) an express or implied assumption of the predecessor's liability by the successor; (2) a de facto merger; (3) a successor corporation that is a mere continuation of the predecessor; or (4) a fraudulent transaction designed to avoid liability.

Motorsport Eng'g Inc. v. Maserati, S.p.A., 183 F. Supp. 2d 209, 218 (D. Mass. 2001).

While plaintiff suggests "upon information and belief" that subsequent to the events alleged in the Complaint, Advantius "became a part of" Workforce and that former Advantius employees now work for Workforce (Complaint ¶ 30), there can be no set of facts that support such belief. Workforce is not a successor of Advantius. When Stevens left Workforce to start Advantius in June 2000, he took some former Workforce employees with him, none of whom

10

was ever rehired by Workforce, nor have any other Advantius employees ever been hired by Workforce.  [SOF ¶ 5.]  Workforce has never assumed Advantius's liabilities, purchased Advantius contracts or other assets, continued Advantius's business, merged with Advantius, or otherwise succeeded to any rights of Advantius.  [SOF ¶ 15.]  Websource HR, which is unaffiliated with Workforce, purchased various client accounts from Advantius in about September 2003.  [SOF ¶ 16.]   As a result, Workforce cannot be held liable as a successor to Advantius, and plaintiff's claims against Workforce must be dismissed.

### III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED AS TO THE WORKFORCE DEFENDANTS, WHO ARE STRANGERS TO THE TRANSACTION AND WRONGFUL ACTS ALLEGED.

Plaintiff's four counts against the Workforce Defendants fail as a matter of law because undisputed facts establish that not one of the Workforce Defendants was even involved in the tortious conduct at issue in this case.  Neither Workforce nor Cambra has ever been involved in any transaction involving AdminaSource.  [SOF ¶ 13.]  Moreover, Driggs, a lawyer, merely assisted in initial drafting of the AdminaSource-Advantius contract, and was not involved in any negotiations or other dealings with AdminaSource.  [SOF ¶¶ 10–12.]  None of the Workforce Defendants had any involvement in Advantius's performance under its contract, much less Advantius's dealings with Sapers & Wallack.  [SOF ¶ 16.]  In short, the Workforce Defendants are complete strangers to the acts alleged in the Complaint.  Therefore, all four counts of the Complaint should be dismissed as to the Workforce Defendants.

### IV. PLAINTIFF'S FRAUD CLAIM (COUNT II) SHOULD BE DISMISSED UNDER RULE 9(b).

Dismissal is also appropriate based on plaintiff's failure to plead fraud with particularity. Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity." Fed. R. Civ. P. 9(b). This requires plaintiff to specify "the time, place, and content of an alleged false representation." McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980). Moreover, "[w]hen multiple defendants are involved in cases arising in this circuit, Rule 9(b) requires that fraud be alleged particularly as to each defendant." Goebel v. Schmid Bros., 871 F. Supp. 68, 73 (D. Mass. 1994). Here, plaintiff runs afoul of Rule 9(b) by failing to plead that the Workforce Defendants made any misstatement, and when or where such misstatements were made.

Plaintiff does not allege that the Workforce Defendants made a misstatement to AdminaSource. Instead, plaintiff claims that "Advantius" made certain statements to AdminaSource, see Complaint ¶¶ 15–16, 38, but fails to specify which agents of Advantius uttered the statements. Such vague allegations run afoul of Rule 9(b) and form an insufficient basis for claiming fraud against the Workforce Defendants. Plaintiff also alleges that Bergstrom and Stevens made misrepresentations, see id. ¶ 39, but fails to suggest that they were acting at the time under authority of the Workforce Defendants. Absent such authority, the Workforce Defendants cannot be liable for Bergstrom and Stevens' alleged statements.

Additionally, plaintiff fails to plead a specific time of the misstatements. The Complaint alleges that AdminaSource was incorporated in March 2002, see id. ¶ 13, and that AdminaService became a successor in interest to AdminaSource, see id. ¶ 14, but fails to specify when that occurred. The Complaint goes on to allege that "[s]hortly thereafter," a meeting occurred between Advantius and AdminaService in New York City where the alleged statements

12

were made. Id. ¶ 15.  However, by failing to specify when AdminaService succeeded to the interests of AdminaSource, there is no way of knowing when the statements were made.  The Complaint thus lacks the specific pleading as to time and place that Rule 9(b) requires.  Based on all these deficiencies, Count II should be dismissed as to the Workforce Defendants for failure to plead fraud with particularity.

## V.   PLAINTIFF'S NEGLIGENCE CLAIM (COUNT III) AND CHAPTER 93A CLAIM (COUNT IV) ARE BARRED BY THE ECONOMIC LOSS RULE.

Plaintiff's negligence claim is barred based on the economic loss rule because the claim seeks solely financial losses, rather than personal injury or property damage.  See Swartz v. Schering-Plough Corp., 53 F. Supp. 2d 95, 104  (D. Mass. 1999) (dismissing negligence claim "because of the economic loss rule 'which precludes recovery in negligence for purely economic loss'") (quoting Clark v. Rowe, 701 N.E.2d 624 (1998)); FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1993) (recognizing "long-standing rule" that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage").  Based on the economic loss rule, Count III must be dismissed.

Likewise, since plaintiff has failed to allege that the Workforce Defendants committed any intentional misconduct, be it conversion or fraud, plaintiff's Chapter 93A claim is a mere negligence claim, barred by the economic loss rule.  See Canal Elec. Co. v. Westinghouse Elec. Co., 973 F.2d 988, 998–99 (1st Cir. 1992) (holding that absent showing of special circumstance such as intentional tortious conduct by defendant, Chapter 93A claim fails where claims underlying such cause of action are negligence and warranty-based claims for economic loss); W.R. Constr. & Consulting, Inc. v. Jeld-Wen, Inc., 2002 U.S. Dist. LEXIS 18686, 28–30; CCH Prod. Liab. Rep. P16, 429 (D. Mass. 2002) (limiting plaintiff's Chapter 93A claim to purely

13

contractual damages and denying claim for tort-related economic loss damages under Chapter 93A). As a result, Count IV must be dismissed.

## VI.     ALTERNATIVELY, A BALANCING OF RELEVANT PUBLIC AND PRIVATE INTERESTS FAVORS TRANSFERRING VENUE TO THE DISTRICT OF UTAH.

Although a plaintiff's choice of forum is normally given some deference, this is a case that requires a change of venue under 28 U.S.C. § 1404(a), which provides as follows:

> (a)     For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This action "might have been brought" in the District of Utah, 28 U.S.C. § 1404(a), because all of the defendants live in Utah. See id. § 1391(a)(1) (providing that civil action may be brought in "judicial district where any defendant resides, if all defendants reside in the same State"). Moreover, issues of convenience and the interests of justice militate in favor of transferring venue to the District of Utah. In assessing these issues of convenience and the interests of justice, this Court balances a number of both private and public interests. See, e.g, Atari v. United Parcel Svc., Inc., 211 F. Supp. 2d 360, 362 (D. Mass. 2002). These interests favor the transfer to the District of Utah.

### A.     Private Interests Strongly Favor Litigating This Action in Utah.

The private interests that this Court must balance in assessing the transfer of venue weigh heavily in favor of transfer to the District of Utah. The private interests include:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) any practical problems associated with trying the case most expeditiously and inexpensively.

Atari, 211 F. Supp. 2d at 362.

First, litigation in Utah is more convenient to the parties. None of the parties resides in this state. Plaintiff is located in Pennsylvania, and all six defendants are in Utah.

Second, litigation in Utah is more convenient to the witnesses. Of all the private and public interest factors, convenience of the witnesses " is 'probably the most important factor, and the factor most frequently mentioned.'" Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991) (quoting Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987)). The large majority of potential witnesses to the transactions at issue and to the Workforce Defendants' lack of involvement in those transactions, all of who reside in Utah, are as follows:

(a) Charles R. Cambra III, President of Workforce. Cambra will testify that he and Workforce had no involvement in the transaction at issue in this case, and that Workforce is not a successor or alter ego of Advantius.

(b) Jonathan Driggs. Driggs will testify that he had no involvement in the tortious conduct at issue in this case, having left the company before the Advantius-AdminaSource contract was finalized and the funds at issue were allegedly converted.

(c) Robert Stevens, President and Chairman of Advantius. Stevens, who with Bergstrom was a leading player in the transaction between AdminaSource and Advantius, will testify about all aspects of the transaction.

(d) Neal Bergstrom, CEO of Advantius. Bergstrom is also likely to testify regarding all aspects of the transaction with AdminaSource.

(e) Kevin Anderson, Controller and CFO of Advantius. Anderson oversaw financial aspects of Advantius, and should testify regarding the funds allegedly converted.

(f) Sean Pasinsky, CTO of Advantius. Pasinsky handled IT issues for Advantius and was actively involved with day-to-day operations of the company. He is expected to have some knowledge about the fund transfers at issue in this case.

(g) Duane Walker, Director of Customer Service/Implementation/Payroll Processing for Advantius. Walker likely has knowledge of the AdminaSource transaction, and will have knowledge of the Workforce Defendants' lack of involvement.

(h) David Lee, Director of Marketing & Development for Advantius. Lee may have some knowledge of the AdminaSource transaction, and will testify regarding the Workforce Defendants' lack of involvement.

   (i) <u>Susie Heard</u>.  Heard was hired by the FBI to determine where Advantius's money went.  She will testify regarding the Workforce Defendants' lack of involvement in the transaction, and the whereabouts of the funds allegedly converted.

   (j) <u>Dan Taggart, Director of Sales for Advantius</u>.  Taggart should have some knowledge of the AdminaSource transaction.

   (k) <u>Sammy Woodruff, Receptionist for Advantius</u>.  Woodruff will testify of the Workforce Defendants' lack of management or control at Advantius.

   (l) <u>Valerie Sandquist, Advantius Clerical Staff</u>.  Sandquist worked with Heard and is expected to testify regarding Advantius financial dealings.

   (m) <u>Michael Jones, Advantius Clerical Staff</u>.  Jones assisted Walker with client implementation.  He has knowledge of the Workforce Defendants' lack of involvement.

   (n) <u>Christopher Dorny, Advantius Clerical Staff</u>.  Dorny assisted Anderson with accounting functions, and has knowledge of Advantius financial dealings.

   (o) <u>Barry Kinzer, Advantius Manager</u>.  Kinzer may have some knowledge of Advantius finances.

   (p) <u>Paul Hunt, Advantius Director of Client Services</u>.  Hunt has knowledge of Advantius's fund transfers for clients, and should be able to testify about this transaction.

   (q) <u>Nathaniel Webb, Advantius IT Support Staff</u>.  Webb may have some knowledge of Advantius financial dealings.

   (r) <u>Mike Slazak, Advantius IT Support Staff</u>.  Slazak may have some knowledge of Advantius financial dealings.

   (s) <u>Sean McLean, Advantius Accounting Assistant</u>.  McLean assisted Anderson and has knowledge of Advantius's financial dealings.  He is expected to testify regarding the financial aspects of this transaction.

   (t) <u>Brian Copeland, Advantius Payroll Tax Manager</u>. Copeland was responsible for filing tax returns of Advantius clients.  He will testify regarding the financial aspects of this transaction.

   (u) <u>David McDougal, President of WebsourceHR</u>.  McDougal will testify that his company acquired Advantius's clientele in about September 2003.

[Cambra Aff. ¶ 14; Driggs Aff. ¶ 11.]

Other witnesses include David Fried from AdminaSource, a New Jersey resident, Complaint ¶ 12, Jeff Garr from AdminaService, a Massachusetts resident, <u>id.</u> ¶ 13, and Sapers &

16

Wallack, a Massachusetts resident, id. ¶ 22.  However, little testimony from non-Utah residents will be necessary to establish the simple fact that AdminaSource or Advantius never transferred Sapers & Wallack's funds to the IRS.  Rather, the large majority of the trial testimony will be from Utah-resident witnesses, as outlined above.

Third, it follows that relevant sources of proof are more readily accessible in Utah. Any paper trail for the missing funds would be located in Advantius's financials, banking records, and other business records, which are located in Utah.

Fourth, the cost of obtaining witnesses is less in Utah.  It would pose an astronomical cost burden to bring the predominantly Utah-based witnesses to Massachusetts for a lengthy jury trial, in contrast to the relatively inexpensive burden of bringing a witness or two from relevant Massachusetts entities to Utah for trial.

Fifth, the Massachusetts venue poses practical problems with trying the case most expeditiously and economically.  Trying the case in Utah will simplify the litigation and trial because relevant Utah documents and witnesses will be readily accessible.  Discovery will be less expensive because numerous days' travel to review documents or examine witnesses will be eliminated.  Trial will be less expensive because witness costs will be significantly less.  In sum, the private interests militate in favor of transfer to the District of Utah.

**B.     The Public Interests Do Not Outweigh the Private Interests That Favor a Transfer to Utah.**

Unlike the private interests, which favor transfer to Utah, the public interests at issue do not weigh in favor of litigation in either Massachusetts or Utah.  These factors include:

> (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; (3) the local interest in having localized controversies decided at home; (4) the unfairness of

17

>burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties flowing from court congestion.

Atari, 211 F. Supp. 2d at 362.  At present, it is unclear which state's law governs because plaintiff has not produced the final, signed AdminaSource-Advantius contract.  The only draft that has been located contains a Utah forum selection and choice-of-law provision.  [SOF ¶ 11.]  If Utah law governs, as anticipated, the transfer of venue to Utah is appropriate.  Additionally, while the alleged wrongdoing occurred in Utah and alleged harm occurred in Massachusetts (or perhaps Pennsylvania, where USLI has its place of business), any burden on Massachusetts or Utah citizens would be equal, and no administrative difficulties are implicated.

In sum, no public interests would be contravened by the transfer of this case to Utah.  The strongest interest of all—the convenience of witnesses—suggests that venue should be transferred, as well as other strong private interests, including the location of evidence, convenience of the parties, and the expeditious and economic resolution of this case.  Weighing these factors, this action should proceed—if at all—in the District of Utah.

## CONCLUSION

Based on the foregoing, defendants Charles R. Cambra III, Jonathan Driggs, and Workforce Solutions, Inc., respectfully request that claims against them be dismissed, and in the alternative, in the event one or more claims remains, the defendants respectfully request that venue over those claims be transferred to the District of Utah.

>Respectfully submitted,
>
>CHARLES R. CAMBRA III, JONATHAN K. DRIGGS, AND WORKFORCE SOLUTIONS, INC.
>
>By their attorneys

DATED:   November 29, 2004          __\s_____
                                    Edward V. Colbert, III (BBO # 566187)
                                    P. Andy Henderson, Jr. (BBO # 655891)
                                    LOONEY & GROSSMAN LLP
                                    101 Arch Street
                                    Boston, Massachusetts  02110-1112
                                    (617) 951-2800

                                    Erik A. Olson
                                    DURHAM JONES & PINEGAR, P.C.
                                    111 East Broadway, Suite 900
                                    Salt Lake City, Utah  84111
                                    (801) 415-3000

## **CERTIFICATE OF SERVICE**

      I, Edward V. Colbert, III, hereby certify that on November 24, 2004, I served a true copy of the foregoing pleading upon all parties hereto properly addressed to:

**Ellen Rappaport Tanowitz**
**Fitzhugh, Parker & Alvaro LLP**
**155 Federal Street**
**Suite 1700**
**Boston, MA  02110-1727**

                                        \s\
                                Edward V. Colbert, III