UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES LIABILITY       )
INSURANCE CO., INC., AS       )
INSURER OF ADMINASERVICE,     )
INC.                          )
                              )
        Plaintiff,            )
                              )        CIVIL ACTION NO. 04-11824 PBS
v.                            )
                              )
ADVANTIUS, INC., NEAL         )
BERGSTROM, ROBERT             )
STEVENS, CHARLES CAMBRA,      )
III, JONATHAN K. DRIGGS,      )
AND  WORKFORCE SOLUTIONS,     )
 INC.,                        )
                              )
        Defendants.           )
                              )
```

## OPPOSITION TO NEAL BERGSTROM'S MOTION
## TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The plaintiff, United States Liability Insurance Co., as Insurer of AdminaService, Inc. ("AdminaService") files this opposition to the defendant, Neal Bergstrom's "(Bergstrom") Motion to Dismiss. In support of this opposition, AdminaService submits this memorandum and the Affidavit of Jeffrey Garr.

### FACTS

In December 2001, Jeffrey Garr ("Garr") began to discuss the establishment of a company that would provide a full range of outsourced human resource services and management tools to other companies with an individual from New Jersey who was already operating a similar company. After those discussions, in March 2002, Garr incorporated AdminaSource of New England, Inc.

AdminaService, Inc in Massachusetts. ("AdminaService") is a successor in interest to Adminasource of New England, Inc. and provides human resource services to companies. Companies hire AdminaService to handle their payroll and benefits administration, to review employee manuals, and to conduct training on employment related issues. At all relevant times, Garr has been the President and CEO of AdminaService and its offices have been located in Massachusetts..

Like AdminaService, Advantius promoted itself as a company that provided human resource outsourcing services to other companies. A company could hire Advantius to handle its payroll, employment taxes and administrative needs. However, Advantius possessed one thing AdminaService did not: software that calculates the amount payroll taxes due to the appropriate state government and the Internal Revenue Service. Advantius purchased a license to the software needed to calculate the payroll taxes. Advantius then licensed use of the software to other companies, including Adminaservice.

In Spring 2002, Advantius and AdminaService representatives in New York City. During that meeting, Advantius represented to AdminaService that it had sufficient funding and that it could provide the services AdminService needed. It represented to AdminaService that it knew how to correctly calculate the taxes and forward them to the IRS and other taxing agencies in a timely

2

manner and in a manner acceptable to the IRS. Advantius made numerous misrepresentations about itself during its conversations with AdminaService and through the literature and other materials provided to AdminaService.

Close to the same point in time, Garr had numerous conversations with Neal Bergstrom and other individuals working at Advantius. At all relevant times, Neal Bergstrom served as Advantius' Chief Executive Officer. Bergstrom and Stevens were repeatedly referred to as elders in the Mormon Church. Advantius represented that Bergstrom and Stevens were upstanding citizens, in order to bolster the company's credibility.

Also, Bergstrom and Stevens personally made several misrepresentations to AdminaService. They indicated that Advantius could not obtain insurance or bonding because it was a new company. Bergstrom and Stevens also told AdminaService that they would never steal the funds they were withdrawing because they would go to jail.

Advantius and AdminaService entered into an oral contract whereby Advantius was to calculate the amount of federal employment taxes owed by AdminaService's clients, withdraw that money directly from the account of AdminaService's client and then forward those sums to the Internal Revenue Service or state/local taxing authorities. The number to be calculated had to be precise and paid on time. Otherwise, the taxing authority would charge

3

AdminaService's clients penalties and late fees.

From April 2002 until September 2003, Neal Bergstrom spoke with Garr and other individuals at AdminaService via telephone with regularly. Jeff Garr spoke to Bergstrom several times a week during this period. At times, the two spoke multiple times a day. Other employees of AdminaService spoke to Bergstrom regularly – on a daily or weekly basis. AdminaService also communicated with Bergstrom by email and fax with the same frequency. The communications ranged from calculating payroll taxes, to new client set up and departing client close-outs, fixing missed or incorrect payments made by Advantius and other business related issues.

AdminaService paid Advantius approximately $100,000 during their 18 month relationship. Advantius also provided identical services to another Massachusetts company, HR Knowledge. At the time of the theft of Sapers & Wallack's money, upon information and belief, the two Massachusetts companies, HR Knowledge and Advantius accounted for approximately one-half of Advantius' business.

Advantius was never adequately funded. Upon information and belief, during its operation the company did not follow standard corporate practices and procedures. By way of example, Advantius did not use separate accounts for its operations and for holding funds in escrow for its clients. Rather, Advantius regularly used funds taken from client's accounts to be paid to the IRS for its operating expenses.

4

Advantius made repeated errors while calculating tax payments for AdminaService's clients. Each time an error occurred, Bergstrom would reassure AdminaService that the error was minor or a software glitch or that it had been taken care of and sooth AdminaServices concerns. In reality, one or more of the defendants took the funds and used them for operating and personal expenses.

During the course of their relationship with AdminaService, the defendants, including Bergstrom, made further misrepresentations by covering and correcting other miscalculations and missed payments. Bergstrom lied to AdminaService on numerous occasions regarding the reasons for missed or late tax payments. The defendants repeatedly reassured AdminaService that everything was fine and that the company was stable, competent and able to perform its job.

On or about April 30, 2003 or May 1, 2003, Advantius withdrew funds from one of AdminaService's clients, Sapers & Wallack Insurance Company, Inc. ("Sapers & Wallack"), purportedly to pay the federal employment taxes due by Sapers & Wallack to the Internal Revenue Service. Sapers & Wallack is a company with its principal place of business in Massachusetts. It held a bank account in its corporate name at Boston Bank and Trust, a bank with offices located in Massachusetts. The funds at issue were withdrawn from Massachusetts and transferred to Advantius in Utah via wire transfer.

Instead of depositing those funds with the Internal Revenue Service, one or more of the Defendants diverted $648,497.73 in funds for their own use.  Advantius and the other defendants, including Neal Bergstrom, secreted this knowledge and neither Sapers & Wallack, nor AdminaService knew that the funds were converted by Advantius.  In or about August 2003, the IRS seized various accounts of Advantius.  At this time Advantius notified AdminaService for the first time that it had not paid the $648,497.33 to the IRS on Sapers and Wallack's behalf.

Neal Bergstrom and Robert Stevens telephoned Jeff Garr in late August 2003 to notify him of the missing funds.  During the numerous telephone conversations that followed, Garr learned from Bergstrom and Stevens that Sapers and Wallack's funds had not been sent to the IRS, but rather had been used to pay other clients' tax bills, for operating expenses or were possibly seized by the IRS during its raid.

The IRS looked to Sapers & Wallack to pay the $648,497.73 in taxes, plus interest and penalties.  Sapers & Wallack filed a claim against AdminaService based on the contract between them and sought to collect the money owed.  USLI defended AdminaService in the arbitration action before the American Arbitration Association known as Sapers & Wallack Insurance Co., Inc. v. AdminaService, Inc. d/b/a AdminaSource of New England, Inc., Arbitration No. 11 Y 145 02122 03.  In settlement of the arbitration, AdminaService paid

6

the Internal Revenue Service in settlement of the debt owed by Sapers & Wallack, plus attorneys fees for Sapers & Wallack's and AdminaService's attorneys fees and costs. USLI, as insurer, stands in the shoes of AdminaService to recover in this action.

## ARGUMENT

### I.   THIS COURT MAY EXERCISE JURISDICTION OVER NEAL BERGSTROM.

This action was filed in this Court based on diversity and therefore, Massachusetts law controls whether this Court may exercise jurisdiction over Bergstrom. *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir.1983).

#### A.   General Jurisdiction.

A Court may exercise either general or specific jurisdiction over a defendant. It is appropriate for a court to exercise general jurisdiction over a defendant when that defendant has engaged in "continuous and systematic activity" within the state. *United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992). Here, AdminaService does not contend that Bergstrom has the necessary contacts for this Court to exercise general jurisdiction. Rather, this Court may exercise specific jurisdiction over Neal Bergstrom, because there is a nexus between Bergstrom's forum based activities and AdminaService's claims.

7

## B.    Specific Jurisdiction.

The Court may exercise jurisdiction over a defendant when it is authorized by statute and consistent with the United States Constitution. *Good Hope Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). Massachusetts' long arm statute extends to the bounds of the United States Constitution. *Automatic Sprinkler Corp. of America v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 NE.2d 423, 424 (1972); *see Levin v. Harned*, 292 F.Supp.2d 220, 224 (D.Mass. 2003) (transacting business requisite set out in long arm statute extends to the bounds of the United States Constitution).

Section Three of Chapter 223A of the Massachusetts General Laws authorizes the exercise of jurisdiction under a number of circumstances, three of which are relevant here: Section (a), a defendant who transacts business in Massachusetts; section (c), a defendant who causes tortious injury by an act or omission in Massachusetts; and, section (d), a defendant who causes tortious injury in Massachusetts by his acts outside Massachusetts when that defendant regularly did business here or derives substantial revenue from services rendered in Massachusetts. M.G.L. ch. 223A §§ 3(a), (c), (d). As will be demonstrated by the ensuing discussion, Bergstrom's conduct falls within the scope of the statute and this Court can exercise jurisdiction over him.

8

1.    **Bergstrom Transacted Business in Massachusetts.**

When a defendant transacts business in Massachusetts and the plaintiff's claim arises from the defendant's conduct of business, then the defendant is subject to the jurisdiction of Massachusetts courts. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). The transacting business clause in Massachusetts is construed broadly and can be met even where the parties communicated by email, fax and telephone exclusively. *Workgroup Technology Corp. v. MGM Grand Hotel, LLC,* 246 F.Supp.2d 102, 109 (D.Mass. 2003) (defendant conducted business in Massachusetts by communicating with Massachusetts plaintiff regarding contract); *Micro Networks Corp. v. Hightec, Inc.*, 195 F.Supp.2d 255, 261 (D.Mass. 2001) (transacting business requirement construed broadly); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193 (1st Cir.1980) (two cease and desist letters sent by defendant to plaintiff in Massachusetts sufficient for transacting business). A defendant does not need to have traveled to Massachusetts to have conducted business here. *Workgroup Technology*, *supra*, 246 F.Supp.2d at 110.

Bergstrom communicated with AdminaService at least several times a week and sometimes, several times a day, regarding operations between the two companies. Bergstrom and AdminaService communicated regularly regarding payments to be made, problems with customers and errant payments which needed to be corrected, and other issues. Almost all of AdminaService's clients were

9

Massachusetts businesses. AdminaService's client, Sapers and Wallack, is located in Cambridge, Massachusetts and used a Massachusetts bank. Advantius withdrew money from Sapers & Wallack's account to process payroll taxes and each time it did, Advantius literally transacted business in Massachusetts.

The causes of action against the defendants, including Bergstrom, arise directly from Bergstrom's regular transaction of business with AdminaService in Massachusetts. In the course of business between AdminaService and Advantius, Bergstrom made misrepresentation, negligently handled Advantius' and AdminaService's business dealings and converted more than $500,000.00. Jurisdiction is proper under this section.

## 2. Bergstrom Caused Tortious Injury by His Acts or Omissions in Massachusetts.

Massachusetts applies a but-for train of events to the assertion of jurisdiction over tort claims. *Tatro*, 416 Mass. at 970-71. The funds were converted from a Massachusetts bank account. But for Bergstrom's actions and statements and reassurances to AdminaService, the parties would not have been in a business relationship and Bergstrom and the other defendants would not have had the opportunity to convert the funds.

Bergstrom's statements were made to Garr, who relied on these statements. Where a defendant knowingly sends into Massachusetts a false statement with the intention that a resident of that state

10

should rely on it, for jurisdictional purposes, defendant has acted in the state. *Burtner v. Burnham*, 13 Mass.App.Ct. 158 (1982). This Court can properly exercise jurisdiction under Mass.Gen.L. ch. 223A § 3(c).

## 3.   Jurisdiction Is Properly Exercised under 3(d).

Under this section, jurisdiction is properly exercised when a defendant causes "tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth... ." Mass.Gen.L. ch. 223A § 3(d) (2004). AdminaService must first show that it suffered tortious injury in Massachusetts. *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir.1999).

Bergstrom caused tortious injury to AdminaService by his actions in Utah. He and other defendants did not exercise due care in carrying out their business. The defendants did not adequately fund Advantius. They did not escrow the funds Advantius withdrew for the purpose of making tax payment. Bergstrom and the other defendants made statements to Garr and others at AdminaService as to his and the company's reputation and ability to properly perform important tasks. Finally, the conversion occurred in Massachusetts because the funds were withdrawn from a Massachusetts bank. *See Swiss American*, 191 F.3d at 37. Each of these actions caused harm to AdminaService in Massachusetts

11

Second, AdminaService much show that Advantius regularly does business in Massachusetts. Mass.Gen.L. ch. 223A § 3(d). Bergstrom regularly did business for Advantius in Massachusetts. In April 2003, approximately one-half of Advantius' business was from the Commonwealth of Massachusetts. In addition, AdminaService paid Advantius approximately $100,000.00 during the course of their relationship for the use of Advantius' software license.

### 4. Bergstrom's Contacts as CEO of Advantius Can Be Used to Confer Jurisdiction over Bergstrom Individually.

An employee's contacts with a forum in his capacity as an employee does not shield the individual from being subject to jurisdiction. *Shipley Co. v. Clark*, 728 F.Supp. 818, 821 (D.Mass. 1990) (Massachusetts does not recognize fiduciary shield doctrine as a limit on the long arm statute). Jurisdiction is based on an individual's contacts with the forum and is satisfied when the employee transacts business whether or not the business is personal or solely on behalf of the corporation. *Yankee Group, Inc. v. Yamashita*, 678 F.Supp. 20, 22 (D.Mass. 1988).

Bergstrom as CEO of Advantius made countless contacts with AdminaService. Those contacts are properly counted in determining whether Bergstrom had sufficient contact with Massachusetts for this court to exercise jurisdiction over him.

12

## II.  THE EXERCISE OF JURISDICTION BY THIS COURT WILL NOT DEPRIVE NEAL BERGSTROM OF DUE PROCESS.

The second part of the analysis must be whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). Three factors are considered: relatedness, purposeful availment and whether the exercise of jurisdiction is reasonable in light of the "gestalt" factors. *United Elec. Workers v. 163 Pleasant St, Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992).

### A.  Bergstrom's Contacts Are Related to the Plaintiff's Claims.

This prong focuses on the nature of plaintiff's claims and the nexus between that claim and the defendant's in-forum activities. *Sawtelle v. Farrell*, 70 F.3d 1381, 1388-89 (1st Cir.1995); *United Elec. Workers*, 960 F.2d at 1089.  *See also Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F.Supp.2d 102, 113 (D.Mass. 2003) (various telephone calls and faxes were related to the formation of the contract at issue in case and fulfilled relatedness element).

Here, the claims asserted by the plaintiff arise directly from Bergstrom's contacts with AdminaService in Massachusetts. Bergstrom's acts and omissions, which included mipresentations and negligent conduct, resulted in harm to AdminaService. Bergstrom's regular telephone calls, emails and faxes were instrumental to the issues raised in this litigation. Thus, the plaintiff's claims are related to Bergstrom's in-forum activities.

13

### B.    Bergstrom Purposefully Availed Himself of Massachusetts.

Defendant's contacts with the forum state are such that he should have reasonably anticipated being haled into court in Massachusetts. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The question here is whether the contacts with Massachusetts were voluntary and foreseeable. *Sawtelle, supra* 70 F.3d at 1391. Bergstrom's contacts were voluntary. Bergstrom, as CEO of Advantius, had a relationship with AdminaService. The two entities had an ongoing business relationship. Bergstrom, as CEO should have reasonably anticipated that he could be sued in Massachusetts for a claim arising out of this relationship.

### C.    The Gestalt Factors Weigh in Plaintiff's Favor.

The Gestalt Factors are a balance of the forum's interest, the litigants' interest and overarching efficiency concerns. *United Elec. Workers*, 960 F.2d at 1088. There are five factors to consider: 1.) the burden of the defendant appearing; 2.) the forum's interest in adjudicating the matter; 3.) the plaintiff's interest in obtaining convenient and effective relief; 4.) the judicial system's interest in obtaining an effective resolution; and 5.) common interests of sovereigns of promoting substantive policy concerns.

### 1.    The Burden of Appearing.

There is always a burden of appearing in a foreign jurisdiction. The defendant must show a special burden which Bergstrom has not done. *Sawtelle*, 70 F.3d at 1395.

14

### 2.    The Forum's Interest in Adjudicating.

Massachusetts has a strong interest in adjudicating matters that involve Massachusetts companies. In particular, Massachusetts has an interest in resolving a dispute where the Massachusetts company claims that an out-of-state company is alleged to have stolen hundreds of thousands of dollars. *See United Elec. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 46 (1st Cir.1993).

### 3.    Plaintiff's Interest in Obtaining Relief.

The plaintiff's choice of forum must be given deference. *Sawtelle*, 70 F.3d at 1395. AdminaService is located in Massachusetts, as are its employees that might be called to testify at trial.

### 4.    The Judicial System's Interest.

Massachusetts has at least as much interest in resolving this matter as Utah would. This factor does not lie in either party's favor.

### 5.    Social Policy Concerns.

Due to the nature of this case, there are no social policy issues. *Workgroup Technology*, 246 F.Supp.2d at 115 (in breach of hotel contract case, no social policy considerations existed).

All in all, the Gestalt factors are neutral or are in favor of the plaintiff. Jurisdiction is properly exercised over Bergstrom.

## CONCLUSION

Advantius and AdminaService did business together for approximately 18 months. During this time, Bergstrom as CEO of Advantius communicated with AdminaService in Massachusetts as much as daily and never less than several times a week. By these contacts Bergstrom transacted business in Massachusetts. He also caused tortious injury by his actions inside and outside Massachusetts. It is proper for this Court to exercise jurisdiction over Neal Bergstrom,

WHEREFORE, the plaintiff prays that this Court deny Neal Bergstrom's motion to dismiss on jurisdictional grounds and any other relief this Court deems just and appropriate.

Respectfully Submitted,
UNITED STATES LIABILITY
INSURANCE CO., INC.
By its attorneys,


Michael A. Fitzhugh
BBO No. 169700
Ellen Rappaport Tanowitz
BBO No. 630710
Fitzhugh, Parker & Alvaro, LLP
155 Federal Street
Boston, MA 02110
(617) 695-2330

16

## CONCLUSION

Advantius and AdminaService did business together for approximately 18 months. During this time, Bergstrom as CEO of Advantius communicated with AdminaService in Massachusetts as much as daily and never less than several times a week. By these contacts Bergstrom transacted business in Massachusetts. He also caused tortious injury by his actions inside and outside Massachusetts. It is proper for this Court to exercise jurisdiction over Neal Bergstrom,

WHEREFORE, the plaintiff prays that this Court deny Neal Bergstrom's motion to dismiss on jurisdictional grounds and any

16

other relief this Court deems just and appropriate.

                              Respectfully Submitted,
                              UNITED STATES LIABILITY
                              INSURANCE CO., INC.
                              By its attorneys,


                              Michael A. Fitzhugh
                              BBO No. 169700
                              Ellen Rappaport Tanowitz
                              BBO No. 630710
                              Fitzhugh, Parker & Alvaro, LLP
                              155 Federal Street
                              Boston, MA 02110
                              (617) 695-2330


## CERTIFICATE OF SERVICE

     I, Ellen Rappaport Tanowitz, hereby certify that on this 3'
day of December, 2004, I served a copy of the foregoing pleading
and all accompanying documents upon all counsel of record and all
pro se parties via first class mail postage pre-paid.


                              Ellen Rappaport Tanowitz


17