UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
UNITED STATES LIABILITY      )
INSURANCE CO., INC., AS      )
INSURER OF ADMINASERVICE,    )
INC.                         )
                             )
        Plaintiff,           )
                             )   CIVIL ACTION NO. 04-11824 PBS
v.                           )
                             )
ADVANTIUS, INC., NEAL        )
BERGSTROM, ROBERT            )
STEVENS, CHARLES CAMBRA,     )
III, JONATHAN K. DRIGGS,     )
AND WORKFORCE SOLUTIONS,     )
 INC.,                       )
                             )
        Defendants.          )
                             )
```

**OPPOSITION TO CHARLES R. CAMBRA, III, JONATHAN K. DRIGGS AND
WORKFORCE SOLUTIONS, INC.'S MOTION
TO DISMISS**

The plaintiff, United States Liability Insurance Co., as Insurer of AdminaService, Inc. ("AdminaService") files this opposition to the defendants, Charles Cambra, III's, ("Cambra"), Jonathan K. Driggs' ("Driggs") and Workforce Solutions, Inc.'s ("Workforce") Motion to Dismiss. In support of this opposition, AdminaService submits this memorandum and relies on the Affidavit of Jeffrey Garr previously submitted, the Second Affidavit of Jeffrey Garr and the Affidavit of Ellen Rappaport Tanowitz.

## FACTS

The liability of these defendants is based upon piercing the corporate veil of Advantius to reach its directors and officers and to reach Workforce, a company whose business was intertwined with

Advantius' business such that it is appropriate to pierce the corporate veil.

Workforce and Advantius shared office space at 1111 Brickyard Road, Suite 109, Salt Lake City, Utah. Tanowitz Aff. Exhibits A and B.[1] Workforce also shared employees. Neal Bergstrom and others used WorkForce and Advantius email addresses virtually interchangeably and conducted business using both email addresses. Affidavit of Jeffrey Garr, dated December 21, 2004 ("Garr Aff. II") at ¶¶ 3 & 5 and Exhibits A and C. AdminaService sent email to nbergstrom@advantius.com. However, Mr. Bergstrom regularly replied from his workforce account, neal@wkforce.com.

Similarly, an individual named Sean Pasinsky sent email from his Workforce account with a signature block of "Sean Pasinsky, CTO of Advantius, Inc." Garr Aff. II at ¶ 4 and Exhibit B. Another employee, Duane Walker, who was a main contact for AdminaService alternated between his Advantius email and his Workforce email account. *Id.* at ¶ 5 and Exhibit C.

In fact, Neal Bergstrom utilized his Workforce account to discuss Sapers & Wallack business. *Id.* ¶ 7 *and* Exhibit E.

In addition, Robert Stevens regularly communicated with Neal Bergstrom using Bergstrom's Workforce account about web-

---

[1] In the interest of efficiency, the plaintiff has not recited all the facts contained in its Memorandum in Opposition to Neal Bergstrom's Motion to Dismiss. Rather, the fact section here focuses on the moving defendants' contacts with the forum.

conferences. *Id.* ¶ 6 and Exhibit D.

According to Utah state records, Cambra is an officer and director of both companies; Driggs is an officer and director of Advantius, Inc. Tanowitz Aff. Exhibits A and B.

Advantius converted funds from others, including, but not limited to MYFAMILY.COM, Inc., a genealogy research website based in Utah. Tanowitz Aff. ¶ 5 and Exhibit C.

## ARGUMENT

I. **THIS COURT MAY EXERCISE JURISDICTION OVER DRIGGS, CAMBRA AND WORKFORCE.**

This action was filed in this Court based on diversity and therefore, Massachusetts law controls whether this Court may exercise jurisdiction over Workforce, Driggs and Cambra. *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir.1983).

A. <u>General Jurisdiction</u>.

A Court may exercise either general or specific jurisdiction over a defendant. It is appropriate for a court to exercise general jurisdiction over a defendant when that defendant has engaged in "continuous and systematic activity" within the state. *United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992).

Here, AdminaService does not contend that Driggs, Cambra or Workforce have the necessary contacts for this Court to exercise general jurisdiction. Jurisdiction for all three of these

3

defendants is based on piercing the corporate veil of Advantius. Workforce and Advantius have a confused intermingling of their companies such that they should be considered one. Advantius did not follow corporate form or procedure and this Court should permit the piercing of the corporate veil to reach Cambra and Driggs individually, officers and directors of Advantius.

B. **Specific Jurisdiction**.

The Court may exercise jurisdiction over a defendant when it is authorized by statute and consistent with the United States Constitution. *Good Hope Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). Massachusetts' long arm statute extends to the bounds of the United States Constitution. *Automatic Sprinkler Corp. of America v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 NE.2d 423, 424 (1972); *see Levin v. Harned*, 292 F.Supp.2d 220, 224 (D.Mass. 2003) (transacting business requisite set out in long arm statute extends to the bounds of the United States Constitution).

Section Three of Chapter 223A of the Massachusetts General Laws authorizes the exercise of jurisdiction under a number of circumstances, three of which are relevant here: Section (a), a defendant who transacts business in Massachusetts; section (c), a defendant who causes tortious injury by an act or omission in Massachusetts; and, section (d), a defendant who causes tortious injury in Massachusetts by his acts outside Massachusetts when that defendant regularly did business here or derives substantial revenue

4

from services rendered in Massachusetts. M.G.L. ch. 223A §§ 3(a), (c), (d). As will be demonstrated by the ensuing discussion, this court may exercise jurisdiction over Advantius and, because it is appropriate to pierce the corporate veil, this Court may exercise jurisdiction over Workforce, Cambra and Driggs.

### 1. Advantius Transacted Business in Massachusetts.

When a defendant transacts business in Massachusetts and the plaintiff's claim arises from the defendant's conduct of business, then the defendant is subject to the jurisdiction of Massachusetts courts. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). The transacting business clause in Massachusetts is construed broadly and can be met even where the parties communicated by email, fax and telephone exclusively. *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F.Supp.2d 102, 109 (D.Mass. 2003) (defendant conducted business in Massachusetts by communicating with Massachusetts plaintiff regarding contract); *Micro Networks Corp. v. Hightec, Inc.*, 195 F.Supp.2d 255, 261 (D.Mass. 2001) (transacting business requirement construed broadly); *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193 (1st Cir.1980) (two cease and desist letters sent by defendant to plaintiff in Massachusetts sufficient for transacting business). A defendant does not need to have traveled to Massachusetts to have conducted business here. *Workgroup Technology, supra*, 246 F.Supp.2d at 110.

Advantius conducted business in Massachusetts. Advantius and

AdminaService communicated on a regular basis via phone, e-mail, and fax with Neal Bergstrom and other Advantius employees and agents. Affidavit of Jeffrey Garr dated December 1, 2004 ("Garr Aff. I") Garr Aff. I at ¶ 15; Garr Aff. II at ¶ 3 & 5 and Exhibits A and C.

The causes of action against Advantius arise directly from its regular transaction of business with AdminaService in Massachusetts. Advantius withdrew the funds from Sapers and Wallack's account and the causes of action arise from that transaction and their contacts with AdminaService in Massachusetts.

### 2. Advantius also Caused Tortious Injury by His Acts or Omissions in Massachusetts.

Massachusetts applies a but-for train of events to the assertion of jurisdiction over tort claims. *Tatro*, 416 Mass. at 970-71. The funds were converted from a Massachusetts bank account. Advantius removed those funds and improperly handled the funds. Advantius repeatedly reassured AdminaService and Garr with statements as to its abilities. Where a defendant knowingly sends into Massachusetts a false statement with the intention that a resident of that state should rely on it, for jurisdictional purposes, defendant has acted in the state. *Burtner v. Burnham*, 13 Mass.App.Ct. 158 (1982). This Court can properly exercise jurisdiction under Mass.Gen.L. ch. 223A § 3(c).

### 3. Jurisdiction Is Properly Exercised under 3(d).

Under this section, jurisdiction is properly exercised when a defendant causes "tortious injury in this commonwealth by an act or

6

omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth... ." Mass.Gen.L. ch. 223A § 3(d) (2004). AdminaService must first show that it suffered tortious injury in Massachusetts. *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir.1999).

Advantius caused tortious injury to AdminaService by its actions in Utah. Advantius failed to exercise due care in carrying out their business. Advantius was inadequately funded. Advantius withdrew funds for the purpose of making tax payment and then deposited those funds in its general operating account, not a separate escrow account. Advantius, through its employees and agents made statements to Garr and others at AdminaService as to Advantius' reputation and ability to properly perform important tasks. Finally, the conversion occurred in Massachusetts because the funds were withdrawn from a Massachusetts bank. *See Swiss American*, 191 F.3d at 37. Each of these actions caused harm to AdminaService in Massachusetts.

Second, AdminaService must show that Advantius regularly does business in Massachusetts. Mass.Gen.L. ch. 223A § 3(d). Advantius regularly did business in Massachusetts. In April 2003, approximately one-half of Advantius' business was from the Commonwealth of Massachusetts. In addition, AdminaService paid

Advantius approximately $100,000.00 during the course of their relationship for the use of Advantius' software license.

### 4. Jurisdiction Can be Properly Conferred Over Workforce.

There are two ways for this Court to exercise jurisdiction over Workforce: the plaintiff can demonstrate that Workforce has sufficient contacts to meet Massachusetts' long arm statute and constitutional requirements[2], or, alternatively, if Workforce and Advantius operated under common control then Workforce may be held liable for Advantius' acts and omissions. In effect, AdminaService has been forced to demonstrate its piercing case without the benefit of discovery.

> When there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting. In such circumstances, in imposing liability upon one or more of a group of 'closely identified' corporations, a court 'need not consider with nicety which of them' ought to be held liable for the act of one corporation 'for which the plaintiff deserves payment.'

*My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). Whether a corporations' veil should be pierced is a fact

---

[2] Workforce transacted business in Massachusetts with AdminaService sufficient to meet Mass.Gen.L. ch. 223A § 3(a) as its agents sent numerous e-mails and communicated with AdminaService. Given the confused status of these two companies, and the preliminary status of this case, it is difficult to discern whether Workforce had any direct role in the claims made in plaintiff's complaint.

8

specific analysis. *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 21 (D. Mass. 1998) The wrongful diversion of corporate assets can justify piercing of the corporate veil. *Id.* at 23 and cases cited therein.

Courts will look at a number of factors, including insufficient capitalization, non-observance of corporate formalities, non-payment of dividends, insolvency of the corporation at the time of the transaction in litigation, siphoning corporate funds, absence of corporate records, non-functioning officers and directors other than shareholders, using corporation for shareholder transactions and using the corporation for promoting fraud. *Pepsi-Cola Metropolitan Bottling Company, Inc. v. Checkers, Inc.*, 754 F.2d 10, 16 (1985); *Evans v. Multicon Constr. Corp.*, 30 Mass.App.Ct. 728, 732 (1991) (list of twelve factors to be considered by the Court).

Here, there is evidence of the co-mingling of Workforce and Advantius and considerable ambiguity as to how the various entities acted. Advantius and Workforce both list their principal place of business as 1111 Brickyard Rd, Suite 109, Salt Lake City, UT 84106. Tanowitz Aff. Exhibits A and B. The business description each listed on their respective Applications for Certificate of Authority for a Foreign Profit Corporation are virtually identical. Advantius states that its business purposes are "Employer Administrative Services". Workforce lists "to provide companies with employment leasing services." *Id.*

In addition to sharing the same workspace, Advantius employees used Workforce email addresses, including Neal Bergstrom, the CEO of Advantius. Bergstrom regularly sent e-mail from the address "Neal@wkforce.com". Garr Aff. II at 3, Exhibit A. Bergstrom even sent emails from his Workforce account and attached the Advantius logo to the bottom. *Id.* Other employees did the same. Garr Aff. II, Exhibit B (Sean Pasinsky used a workforce account and signed his emails as "CTO of Advantius, Inc.").

Duane Walker was a central contact for AdminaService throughout its relationship with Advantius. Mr. Walker alternated between the two email addresses when communicating with AdminaService. Both Mr. Walker and Mr. Bergstrom used their Workforce accounts to discuss the Sapers & Wallack account. Garr Aff. II at 5, Exhibit C.

Cambra and Stevens served as officers and directors of both Advantius and AdminaService. Tanowitz Aff., Exhibit B. Driggs served as a director and officer of Advantius. *Id.* When Jeff Garr traveled to Utah in April and May 2003 to meet with Advantius, Cambra met with him on behalf of Advantius. Garr Aff. II ¶ 8. Cambra, among others, reassured Garr about the financial stability and ability of Advantius to handle AdminaService's accounts. *Id.* ¶ 8.

Workforce concedes that it lent Advantius start-up funds. Cambra Aff. ¶ 6. The plaintiff claims that Advantius was inadequately capitalized. It is unclear what role Workforce may

have had in Advantius' capitalization.

This case is similar to *Sigros v. Walt Disney World, Co.*, 129 F.Supp.2d 56 (D.Mass. 2001) where the court found that Disney could not avoid jurisdiction by saying that the reservations entity was separate from the Walt Disney World entity where Disney shares offices with the reservations office and confirmations were sent out using Disney stationery. 129 F.Supp.2d at 64.

Even before any discovery, there are questions as to Workforce and Advantius's relationship. Employees of Advantius and/or Workforce were certainly confused who they were working for, as emails were sent randomly from either account, including the undisputed CEO of Advantius, Neal Bergstrom. Workforce and Advantius confused their operations and Workforce should be held liable for Advantius' acts and omissions.[3]

### 5. Cambra and Driggs are liable for Advantius' acts and omissions as officers and directors of Advantius.

According to records filed with the State of Utah, both Cambra and Driggs were officers and directors of Advantius. Tanowitz Aff. Exhibit B. Indeed, neither of these defendants deny the plaintiff's allegation that they are officers and directors of Advantius.

Advantius' corporate veil should be pierced and the officers and directors held personally liable. The same general factors are

---

[3] At the very least, plaintiff would request permission to conduct discovery regarding the financial structure and corporate relationship of these entities.

11

considered when looking at individuals who the plaintiff seeks to hold liable. *See My Bread Baking*, 353 Mass. at 619.

Advantius did not follow corporate procedures. Advantius did not maintain separate accounts for its general operating expenses and escrow funds, it was insufficiently capitalized, and the plaintiff avers that the converted funds which are the subject of this litigation were siphoned off to one or more of the defendants. Garr Aff. I at ¶ 16 and Complaint generally.

Advantius used its corporate shield to promote fraud. It converted funds not only from Sapers & Wallack, but from other companies, such as Myfamily.com, Inc., a genealogy website. Tanowitz Aff. ¶ C. Advantius engaged in a pattern of deception for the benefit of its officers, directors and/or shareholders. At this stage, without the benefit of discovery, plaintiff does not know the full extent of Advantius activities. The corporate veil should be pierced and the individuals behind the company be held individually liable.

## II.   THE EXERCISE OF JURISDICTION BY THIS COURT WILL NOT DEPRIVE THESE DEFENDANTS OF DUE PROCESS.

The second part of the analysis must be whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). Three factors are considered: relatedness, purposeful availment and whether the exercise of jurisdiction is reasonable in light of the "gestalt" factors. *United*

*Elec. Workers v. 163 Pleasant St, Corp.*, 960 F.2d 1080, 1089 (1st Cir.1992). As Advantius' alter ego, if Advantius would not be deprived of due process, then neither would Workforce. Similarly, as officers and directors of Advantius, it would not violate due process to subject them to the jurisdiction of this improperly maintained corporation. 4A Fed. Prac. & Procedure Civ.3d § 1069.4 (2004).

### A. Advantius' Contacts Are Related to the Plaintiff's Claims.

This prong focuses on the nature of plaintiff's claims and the nexus between that claim and the defendant's in-forum activities. *Sawtelle v. Farrell*, 70 F.3d 1381, 1388-89 (1st Cir.1995); *United Elec. Workers*, 960 F.2d at 1089. *See also Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F.Supp.2d 102, 113 (D.Mass. 2003) (various telephone calls and faxes were related to the formation of the contract at issue in case and fulfilled relatedness element).

Here, the claims asserted by the plaintiff arise directly from Advantius' contacts with AdminaService in Massachusetts. Advantius' acts and omissions, which included misrepresentations and negligent conduct, resulted in harm to AdminaService. Advantius' made regular telephone calls, emails and faxes which were instrumental to the issues raised in this litigation. Thus, the plaintiff's claims are related to Advantius' in-forum activities.

### B. Advantius Purposefully Availed Itself of Massachusetts.

Defendant's contacts with the forum state are such that it

should have reasonably anticipated being haled into court in Massachusetts. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The question here is whether the contacts with Massachusetts were voluntary and foreseeable. *Sawtelle*, *supra* 70 F.3d at 1391. Advantius' contacts were voluntary. Advantius had an oral contract with AdminaService which created an ongoing relationship. Cambra and Driggs, as officers and directors, should have reasonably anticipated that they could be sued in Massachusetts for a claim arising out of this relationship when Advantius failed to maintain corporate formalities. Similarly, Workforce should have anticipated that it might be subject to suit in Massachusetts.

### C. The Gestalt Factors Weigh in Plaintiff's Favor.

The Gestalt Factors are a balance of the forum's interest, the litigants' interest and overarching efficiency concerns. *United Elec. Workers*, 960 F.2d at 1088. There are five factors to consider: 1.) the burden of the defendant appearing; 2.) the forum's interest in adjudicating the matter; 3.) the plaintiff's interest in obtaining convenient and effective relief; 4.) the judicial system's interest in obtaining an effective resolution; and 5.) common interests of sovereigns of promoting substantive policy concerns.

The factors are either neutral or weigh in favor of jurisdiction. Advantius can show no special burden. *Sawtelle*, 70 F.3d at 1395. Massachusetts has a strong interest in resolving a dispute where the Massachusetts company claims that an out-of-state

company is alleged to have stolen hundreds of thousands of dollars. *See United Elec. Workers v. 163 Pleasant St. Corp.*, 987 F.2d 39, 46 (1st Cir.1993). And plaintiff's choice of forum of Massachusetts must be given deference. *Sawtelle*, 70 F.3d at 1395. All in all, the Gestalt factors are neutral or are in favor of the plaintiff. Jurisdiction is proper.

### III. The Fraud Claim Against the Defendants Is Properly Pled under Fed.R.Civ.P. 9

The relationship between Advantius and AdminaService was an ongoing one, with regular communications and, as it turned out, regular misrepresentations and intentional falsehoods told to AdminaService by Advantius. The complaint outlines when the most egregious misrepresentations were made, such as in New York in Spring 2002 and thereafter during numerous conversations about Bergstrom and Stevens' reputations. *See Complaint*.

Alternatively, if the Court does not feel that the Complaint pleads the fraud allegations with sufficient particularity, then the plaintiff would ask for leave to amend its complaint so that it may state with more particularity the fraudulent statements made to the defendants.

### IV. The Economic Loss Rule Bars Only the Plaintiff's Negligence Claim.

The economic loss rule would bar the negligence claim for the plaintiff, but only the negligence claim. *Aldrich v. ADD, Inc.*, 437 Mass. 213, 222 (2002) quoting *FMR Corp. v. Boston Edison Co.*, 415

Mass. 393, 395 (1993). The economic loss rule does not apply to the plaintiff's fraud claim, *Arthur D. Little Intern., Inc. v. Dooyang Corp.*, 928 F.Supp. 1189, 1205 (D.Mass. 1996), Chapter 93A claims, *Clark v. Rowe*, 428 Mass. 339, 342 (1998) or to negligent misrepresentations, *Nota Constr. Corp. v. Keyes, Inc.*, 45 Mass.App.Ct. 15, 20 (1998).

V.  **Venue in Massachusetts Is Appropriate.**

In determining whether to grant a motion pursuant to 28 U.S.C. § 1404, the Court will look at the public and private interest factors. The private factors are: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; and (6) any practical problems associated with trying the case most expeditiously and inexpensively. *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n. 6 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). The public factors are: (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (2) the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; (3) the local interest in having localized controversies decided at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties flowing from court congestion. *Id.*

Many of these factors have already been discussed in the

16

context of the gestalt factors. *Sigros*, 129 F.Supp.2d at 71 (analysis in gestalt factors applicable to venue transfer request under §1404). A presumption in favor of the plaintiff's choice of forum exists, and the burden of proving that transfer is warranted is on the defendant. *See Piper*, 454 U.S. at 255, (declaring that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum").

With respect to the private factors, the convenience of the parties does not weigh in favor of either party. Clearly Massachusetts is more convenient for the plaintiff; Utah for the defendant.

The balance does not focus on the number of witnesses, but rather the comparative financial ability and the party who can best absorb that cost. *Sigros*, 129 F.Supp.2d at 71. When a witness can be secured by the Court or because the witness is an employee of a party, then this factor becomes less important. *Id.*

Nearly all the witnesses are located in either Utah or Massachusetts. The defendants have listed a large number of Advantius employees who they claim might need to testify about this case, including Advantius' receptionist.[4] It is not clear whether any of these individuals are currently employed by Workforce. This

---

[4] The plaintiff questions how Workforce, a company with no connection to Advantius, knows the identify of so many of Advantius' employees and has intimate knowledge of each Advantius employee's job description.

17

is a case about stolen funds and Advantius' false statements to AdminaService by certain individuals. The plaintiff respectfully suggests that far from all the individuals listed would even need to be deposed, let alone for trial. Most of the evidence in this case will likely come from the individual defendants and corporate books and records.

The plaintiff's witness list would include Jeffrey Garr, the President and CEO of AdminaService to testify to the misrepresentations, the relationship between his company and Advantius and his dealings with Workforce and their involvement with Advantius. Marissa Coffey, another AdminaService employee, had regular communications with the individuals listed in the defendants' memoranda and would testify as to her dealings with these individuals. Sapers and Wallack, a non-party and one which could not be forced to travel to Utah, is a key witness who is needed to testify that its funds were removed from its bank account and that its taxes were not paid. These witnesses would be necessary for plaintiff to prove its case at trial and the cost for these witnesses to travel would be quite high as well, particularly since the plaintiff's funds were converted.

The evidence for this case is located in both Massachusetts and Utah. Bank records, held at a national bank, can be subpoenaed by either party and would likely be admitted as business records.

With respect to the public interest factors, Massachusetts law would govern this dispute. There is no signed contract between

Advantius and AdminaService and the acts and omissions which give rise to this action occurred in Massachusetts. This Court and Massachusetts jurors have an interest in deciding this action as it involves a local Massachusetts business which suffered a serious loss because of Advantius' actions with respect to a second local Massachusetts business.

The defendants do not meet their burden under 28 U.S.C. § 1404(a) to have this action transferred to Utah.[5]

## CONCLUSION

Advantius and AdminaService did business together for approximately 18 months. Jurisdiction is properly asserted over Advantius. Workforce shared office space, conducted a nearly identical business with shared officers and directors and employees of Advantius regularly conducted business using the Workforce name. Workforce has intimate knowledge of the workings of Advantius, including to whom it sold its business and the whereabouts and job description of a number of Advantius employees. The corporate veil should be pierced with respect to Cambra and Driggs as officers and directors of Advantius, a company that failed to maintain corporate formalities.

WHEREFORE, the plaintiff prays that this Court deny the motion to dismiss of Charles Cambra, III, Jonathan Driggs and Workforce

---

[5] Without waiving the foregoing argument, the plaintiff would agree to transfer the case against these defendants to Utah, if this Court found that it does not have jurisdiction over these moving defendants. The plaintiff respectfully suggests that these defendants are only liable if Advantius' veil can be pierced, an issue separate from the direct liability of Advantius and the other defendants.

Solutions, Inc. and any other relief this Court deems just and appropriate.

>Respectfully Submitted,
>UNITED STATES LIABILITY
>INSURANCE CO., INC.
>By its attorneys,
>
>_____
>Michael A. Fitzhugh
>BBO No. 169700
>Ellen Rappaport Tanowitz
>BBO No. 630710
>Fitzhugh, Parker & Alvaro, LLP
>155 Federal Street
>Boston, MA 02110
>(617) 695-2330

## CERTIFICATE OF SERVICE

I, Ellen Rappaport Tanowitz, hereby certify that on this day of December, 2004, I served a copy of the foregoing pleading and all accompanying documents upon all counsel of record and all pro se parties via first class mail postage pre-paid.

>_____
>Ellen Rappaport Tanowitz