UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE CO., INC., AS INSURER OF ADMINASERVICE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANTIUS, INC., NEAL BERGSTROM, ROBERT STEVENS, CHARLES CAMBRA III, JONATHAN K. DRIGGS, AND WORKFORCE SOLUTIONS, INC.,<br><br>Defendants. | Civil No. 0411824 PBS |

**REPLY MEMORANDUM SUPPORTING MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER VENUE OF DEFENDANTS CHARLES R. CAMBRA III, JONATHAN K. DRIGGS, AND WORKFORCE SOLUTIONS, INC.**

Appearing specially and without consenting to jurisdiction in this Court, defendants Workforce Solutions, Inc., ("Workforce"), Charles R. Cambra III, and Jonathan K. Driggs (collectively the "Workforce Defendants") submit this reply memorandum in support of their motion to dismiss under Fed. R. Civ. P. 12(b)(2) and (6), and alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

The most telling admission in plaintiff's opposition is that the Workforce Defendants "are only liable if Advantius's veil can be pierced, an issue separate from the direct liability of Advantius and the other defendants" i.e., Bergstrom and Stevens. Plaintiff's Opposition at 19

n.5. Plaintiff concedes that the Workforce Defendants are not <u>directly</u> liable for the fraud and conversion allegedly committed by Advantius and its two controlling officers, Stevens and Bergstrom, but are only liable under an alter-ego theory. Utterly failing to allege a basis for personal jurisdiction independent of Advantius's own contacts with Massachusetts, plaintiff relies entirely on veil piercing in seeking jurisdiction over the Workforce Defendants. However, plaintiff's conclusory allegations are insufficient to meet its burden in opposing a Rule 12(b)(2) motion of making a prima facie showing of jurisdiction. As a result, dismissal is appropriate.

Moreover, dismissal is appropriate as a matter of law under Rule 12(b)(6) because plaintiff has failed to dispute any of the factual allegations of the Workforce Defendants' motion, or otherwise show that there is a genuine issue for trial on the veil-piercing issue. In any event, if one or more of plaintiff's claims against the Workforce Defendants survive dismissal, the venue for litigating those claims should be transferred to Utah.

## ARGUMENT

**I.  PLAINTIFF HAS FAILED TO MAKE A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION OVER THE WORKFORCE DEFENDANTS.**

Making no allegation that the Workforce Defendants had any involvement in the alleged wrongful acts, plaintiff relies entirely on veil piercing in seeking jurisdiction over the Workforce Defendants. Plaintiff's Opposition at 5, 8–12. However, it is plaintiff's burden to make a prima facie showing of jurisdiction. See <u>LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.</u>, 193 F. Supp. 2d 296, 298 (D. Mass. 2002) ("When assessing questions of personal jurisdiction, this Court employs the prima facie standard under which the Court considers, taking all the plaintiff's 'properly supported proffers of evidence' and allegations as true, whether the plaintiffs have

provided sufficient evidence to support this Court's exercise of jurisdiction."). Here, since plaintiff concedes that the Workforce Defendants themselves lack sufficient minimum contacts with Massachusetts, plaintiff must at minimum meet the prima facie standard for piercing the corporate veil with respect to each of the Workforce Defendants to avoid dismissal for lack of personal jurisdiction.

As this Court has observed, "Disregard of a corporate entity should occur only in '"rare particular situations to prevent gross inequity."'" George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 150 (D. Mass. 1998) (quoting Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 732, 574 N.E.2d 395 (1991); My Bread Baking Co. v. Cumberland Farms, 353 Mass. 614, 620, 233 N.E.2d 748 (1968)); see also My Bread, 353 Mass. at 619–20 ("Massachusetts has been somewhat more 'strict' than other jurisdictions in respecting the separate entities of different corporations."); Berger v. H.P. Hood, Inc., 416 Mass. 652, 657, 624 N.E.2d 947 (1993) ("It is only where the corporation is a sham, or is used to perpetrate deception to defeat a public policy that it can be disregarded.").

This Court follows the test for veil piercing outlined in the My Bread case, which permits disregard of the corporate entity

> when (1) there is active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is "a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."

Evans, 30 Mass. App. Ct. at 732–33 (quoting My Bread, 353 Mass. at 619).  Combining the My Bread factors with other factors addressed when piercing the corporate veil as to individuals, this Court has developed a uniform list of twelve factors that should be considered in deciding whether to pierce the corporate veil:

(1)   common ownership;
(2)   pervasive control;
(3)   confused intermingling of business activity[,] assets, or management;
(4)   thin capitalization;
(5)   nonobservance of corporate formalities;
(6)   absence of corporate records;
(7)   no payment of dividends;
(8)   insolvency at the time of the litigated transaction;
(9)   siphoning away of corporate assets by the dominant shareholders;
(10)  nonfunctioning of officers and directors;
(11)  use of the corporation for transactions of the dominant shareholders; [and]
(12)  use of the corporation in promoting fraud.

Gateman, 16 F. Supp. 2d at 149–50 (quoting Evans, 30 Mass. App. Ct. at 733).

As discussed below, with respect to each of the Workforce Defendants, plaintiff has not met the prima facie standard for piercing the corporate veil, utterly failing to apply the My Bread factors or the twelve Gateman factors to the facts of this case.   As a result, this action should be dismissed as to each of the Workforce Defendants for lack of personal jurisdiction.

    **A.**    **Plaintiff Has Failed to Make a Prima Facie Case of Veil Piercing as to Workforce.**

Plaintiff's opposition centers on an alleged "confused intermingling" between Workforce and Advantius—the third Gateman factor—alleging that (1) Advantius and Workforce shared a business address, (2) some Advantius employees that corresponded with plaintiff used a

Workforce e-mail account, and (3) Advantius and Workforce shared some officers or directors[1]; and (4) the respective business purposes of Advantius and Workforce were similar.  Even putting aside for a moment the Workforce Defendants' affidavits and taking the allegations of plaintiff's affidavits as true,[2] this evidence is insufficient to satisfy the third factor.

As this Court has recognized, the "salient fact" in assessing this third factor is whether the plaintiff itself was confused about the entity with whom it was dealing.  Gateman, 16 F. Supp. 2d at 151–52.  As the First Circuit has held, when there is no evidence that the plaintiff was misled or confused about the relationship between the two defendant entities, there can be no veil piercing.  See Birbara v. Locke, 99 F.3d 1233, 1240 (1st Cir. 1996); see also Gateman, 16 F. Supp. 2d at 158 (holding that second, disjunctive My Bread prong for veil piercing cannot be satisfied when there is lack of confusion).

Here, as the First Garr Affidavit demonstrates, AdminaService was not confused at all about the fact that it was dealing with Advantius, and not Workforce or any other entity.  Garr testifies that it was Advantius—and not Workforce—that promoted itself to Garr, First Garr Aff. ¶ 5; met with Garr in Spring 2002, id. ¶ 6; communicated with Garr, id. ¶ 8; made misrepresentations to Garr, id. ¶¶ 7, 9–11; entered into a contract with AdminaService, id. ¶ 12;

---

[1] "Mere overlapping of boards does not meet the test of "'active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control.'" Birbara v. Locke, 99 F.3d at 1240 (quoting My Bread, 233 N.E.2d at 752); see also American Home Assur. Co. v. Sport Maska, Inc., 808 F. Supp. 67, 73 (D. Mass. 1992) ("[T]hat a parent and subsidiary share common officers, by itself, is not enough to support the alter-ego theory.").

[2] As set forth in the Workforce Defendants' uncontroverted affidavits, there was no such "confused intermingling" between Advantius and Workforce.  See Cambra Aff. ¶¶ 4, 5, 8, 12; Second Cambra Aff. ¶¶ 2–8.

received money from AdminaService, id. ¶ 13; performed services on behalf of AdminaService, id. ¶ 12; provided identical services to another Massachusetts company, id. ¶ 13; was "used" by AdminaService, id. ¶ 14; and had access to and withdrew funds from AdminaService's clients' accounts, including Sapers and Wallack's, id. ¶¶ 14, 18.

In short, Garr concedes, it was Advantius with whom AdminaService "did business." Id. ¶ 24.  Garr's affidavit is wholly devoid of any allegation that he thought he was dealing with Workforce, rather than Advantius, or that the alleged "intermingling" of Workforce and Advantius confused him in any way.  See also, e.g., Birbara, 99 F.3d at 1240 ("Plaintiffs were never misled about which corporate entity . . . was obligated to them or was dealing with them.").  Alternatively, even if there was confusion, veil piercing is inappropriate because "that confusion did not originate from a misuse of the corporate form of [Advantius] with the purpose of confusing [AdminaService]."  Gateman, 16 F. Supp. 2d at 158.

In all events, even if plaintiff had satisfied the "confused intermingling" factor, veil piercing fails because plaintiff has failed to come forward with any evidence to support the eleven other Gateman factors.  As the Gateman case illustrates, such a void of evidence dooms plaintiff's burden of making a prima facie showing of veil piercing.  The Court observed in Gateman—where as many as four factors favored veil piercing—that while "[t]here is no minimum requirement for the number of factors required to find personal liability" for a corporation's wrongful acts, the Court was "unaware of any case that has pierced through to individuals with so few factors."  Gateman, 16 F. Supp. 2d at 157–58.  If four factors were insufficient (as in Gateman), one factor certainly falls short.

Moreover, examining My Bread, the Gateman Court observed that absent a showing of confusion (as discussed above, there was none), a plaintiff must show that there was a "'fraudulent or injurious consequence by reason of the relationship'" between the two entities. Id. (quoting Evans, 30 Mass. App. Ct. at 732). Here, no such showing has been made. Indeed, "[t]here is no evidence showing that [Advantius] was a sham or merely a shield behind which [Workforce] could hide to escape liability for its own obligations." Birbara, 99 F.3d at 1240. As a result, claims against Workforce should be dismissed for lack of personal jurisdiction.

### B. Plaintiff Has Failed to Make a Prima Facie Case of Veil Piercing as to Driggs or Cambra.

The veil piercing allegations of plaintiff's opposition wholly ignore Driggs and Cambra, who have been named as defendants in this action simply because they were officers of Advantius when Advantius was formed. Plaintiff's Opposition at 11–12. However, jurisdiction over an officer cannot be based solely on jurisdiction over the corporation. Nahigian v. Leonard, 233 F. Supp. 2d 151, 159 (D. Mass. 2002) (citing Beaver Builders v. Schnip Bldg., 622 F. Supp 1051, 1054 n.1 (D. Mass 1985)). Rather, personal jurisdiction must be based on the acts of the officer himself within the forum state, id., and here, there is no dispute that Driggs and Cambra lack sufficient minimum contacts with Massachusetts.

The vague, conclusory allegations in plaintiff's opposition about Advantius's "misuse" of the corporate shield have no connection at all to Driggs and Cambra. Plaintiff's Opposition at 11–12. There is no evidence or allegation that Driggs or Cambra were promoting fraud, pervasively controlling Advantius, or otherwise committing acts that fall within the twelve Gateman factors. Rather, according to Garr's own testimony, it was Bergstrom and Stevens who

7

held themselves out as controlling officers of Advantius and made fraudulent misrepresentations to AdminaService. First Garr Aff. ¶¶ 6–11. It was Bergstrom with whom AdminaService made regular contact throughout the eighteen-month relationship between Advantius and AdminaService. Id. ¶¶ 15, 17, 24.

The only allegations of the First Garr Affidavit that attempts to taint Driggs and Cambra are the speculative (and ultimately false) conclusions that "one or more of the defendants" took Sapers & Wallack's money. First Garr Aff. ¶¶ 17, 19. Such sheer speculation, without attribution and where there are three other defendants (Advantius, Stevens, and Bergstrom) who were actually involved in the transactions with AdminaService and Sapers & Wallack, is not enough to subject Driggs and Cambra to veil piercing and personal jurisdiction. Plaintiff's speculation about who might have taken the money is particularly fruitless in light of the sworn affidavit testimony that Driggs, Cambra, and Workforce never received any money from AdminaService or its clients. See Cambra Aff. ¶ 11; Driggs Aff. ¶ 10; Second Cambra Aff. ¶ 7; Second Driggs Aff. ¶ 5.

In sum, since there is no evidence at all that Driggs and Cambra exercised pervasive control, siphoned away corporate assets, used Advantius for their own transactions, or used Advantius in promoting fraud, and no evidence at all of confused intermingling of Driggs or Cambra with Advantius (nor any of the other Gateman factors vis-à-vis Driggs and Cambra), the veil cannot be pierced as to these two individuals. Claims against Driggs and Cambra should be dismissed under Rule 12(b)(2).

**II.     BY FAILING TO CONTROVERT THE WORKFORCE DEFENDANTS' FACT STATEMENTS, PLAINTIFF HAS FAILED TO CREATE A GENUINE ISSUE FOR TRIAL AND DISMISSAL IS APPROPRIATE AS A MATTER OF LAW.**

If, alternatively, this Court determined to exercise jurisdiction over any one of the Workforce Defendants, dismissal as a matter of law would be appropriate under Rule 12(b)(6) based on plaintiff's failure to dispute any of the record evidence that supports the Workforce Defendants' motion to dismiss, which is treated as a motion for summary judgment.  Rule 12(b) provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(b).  Under Rule 56, "[w]hen a motion for summary judgment is made and supported as provided in this rule, . . . the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed R. Civ. P. 56(e).  The Local Rules add that "[o]pposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried."  D. Mass. Local Rule 56.1.  Importantly, any material facts set forth in the moving party's statement of facts "will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."  Id.

Here, the Workforce Defendants have moved under Rule 12(b)(6) for the dismissal as a matter of law of plaintiff's claims against them, and has supported its motion with the affidavits of Cambra and Driggs.  See Workforce Defendants' Motion to Dismiss at 1–2; Workforce

9

Defendants' Memorandum at 9–13. Thus, the motion may be treated as one for summary judgment. Fed R. Civ. P. 12(b). Yet, in its opposition, plaintiff has failed to set forth a statement responding to any of the properly supported fact statements listed in the Workforce Defendants' memorandum. The fact that the Workforce Defendants' motion was styled as a motion to dismiss is no excuse. Parties must be prepared to have motions to dismiss treated as motions for summary judgment. See Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35 (1st Cir. 2004).

Under Local Rule 56.1, all of the Workforce Defendants' statements of fact are deemed admitted. Thus, it is admitted that:

> 1. Workforce has observed all corporate formalities; maintains its own accounts, financials, and tax returns; and keeps its own books and other corporate records. (SOF ¶ 2.)[3]
>
> 2. Stevens and the Workforce employees that went with Stevens to Advantius in about June 2000 were never rehired by Workforce. (SOF ¶ 5.)
>
> 3. Neither Driggs nor Cambra was involved in Advantius control, decision making, or operations, and they last provided services for Advantius in February 2002 and late 2000, respectively. (SOF ¶¶ 8, 14.)
>
> 4. Neither Cambra nor Workforce has ever been involved in any transaction or decision making involving AdminaSource, and neither was involved in handling any funds for AdminaSource or AdminaSource's clients, including the Sapers & Wallack funds at issue in this case. (SOF ¶¶ 13, 16.)
>
> 5. Workforce has never assumed Advantius's liabilities, purchased Advantius contracts or assets, continued Advantius's business, merged with Advantius, or otherwise succeeded to any rights of Advantius. Workforce and Advantius have never commingled their accounts with each other. (SOF ¶ 17.)

---

[3] "SOF" refers to the Statement of Undisputed Facts in the Memorandum Supporting the Workforce Defendants' Motion to Dismiss.

Considering these admissions in light of plaintiff's concession that the Workforce Defendants "are only liable if Advantius's veil can be pierced," Plaintiff's Opposition at 19 n.5, plaintiff cannot pierce the corporate veil as a matter of law. The admitted facts trump a finding vis-à-vis any of the Workforce Defendants of pervasive control, confused intermingling, nonobservance of corporate formalities, siphoning away of corporate assets, use of the corporation in promoting fraud, etc.—basic factors in the veil-piercing analysis. Gateman, 16 F. Supp. 2d at 149–50. And, as discussed above, plaintiff has presented no evidence of a "'fraudulent or injurious consequence by reason of the relationship'" between Workforce and Advantius, which veil piercing also requires. Id. (quoting Evans, 30 Mass. App. Ct. at 732). In sum, based on record facts, plaintiff's claims against the Workforce Defendants—which are entirely indirect, alter-ego claims—fail as a matter of law.

## III.  PLAINTIFF'S FRAUD CLAIM (COUNT II) SHOULD BE DISMISSED UNDER RULE 9(b).

Plaintiff's opposition fails to address any of the Workforce Defendants' specific arguments and authorities that dictate a dismissal of plaintiff's fraud claim. This claim should be dismissed for the reasons addressed in the Workforce Defendants' opening memorandum.

## IV.  PLAINTIFF'S NEGLIGENCE CLAIM (COUNT III) AND CHAPTER 93A CLAIM (COUNT IV) ARE BARRED BY THE ECONOMIC LOSS RULE.

Plaintiff readily concedes that the negligence claim (Count III) should be dismissed based on the economic loss rule. Plaintiff's Opposition at 15. However, with respect to the Chapter 93A claim (Count IV), plaintiff attempts to avoid dismissal by citing—with no analysis whatsoever—the case of Clark v. Rowe, 428 Mass. 339, 342 (1998), but without citing the

multiple authorities in the Workforce Defendants' Memorandum (at pages 14 to 15) supporting the application of the economic loss rule. In any event, the Clark case did not even examine the issue of whether the economic loss rule applies to a Chapter 93A claim. See Clark, 428 Mass. at 342. This claim should be dismissed.

V.  **VENUE FOR ANY REMAINING CLAIMS SHOULD BE TRANSFERRED TO THE DISTRICT OF UTAH.**

Plaintiffs' claims—if any remain after the foregoing dismissals—should be transferred to the District of Utah. Plaintiff agrees that a change of venue depends on a balancing of both private and public interests.

However, plaintiff all but ignores the Workforce Defendants' analysis of the private interests. First, plaintiff incorrectly opines that "convenience of the parties does not weigh in favor of either party." Plaintiff's Opposition at 17. Plaintiff forgets that even it does not reside in Massachusetts, and that all six defendants reside in Utah. Second, plaintiff misses the fact Utah is more convenient to witnesses in this case. Responding to this "most important factor" in the venue transfer analysis, Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991), plaintiff merely lists three witnesses—two AdminaService employees and Sapers & Wallack, and fails to refute that the large majority of potential witnesses reside in Utah. Plaintiff's Opposition at 18. Third, plaintiff suggests that the only relevant documents are bank records, but any paper trail for the missing funds would be found in Advantius's Utah-based financials and business records. Id. Fourth, plaintiff never addresses at all the Workforce Defendants' position that the cost of obtaining witnesses is less in Utah, and that the Massachusetts venue poses practical problems with trying the case most expeditiously and economically. Based on these

private interests, which plaintiff wholly glosses over, venue should be transferred to the District of Utah.

Plaintiff also ignores the analysis of public interests in the Workforce Defendants' memorandum. Since policies of both Massachusetts and Utah are implicated, it would be equally fair to burden Massachusetts or Utah citizens with this case. In sum, no public interests would be contravened by the transfer of this case to Utah. And, weighing these against the private interests, transfer of venue is appropriate.

## CONCLUSION

Based on the foregoing, defendants Charles R. Cambra III, Jonathan Driggs, and Workforce Solutions, Inc., respectfully request that claims against them be dismissed or, alternatively, that venue for any claims not dismissed be transferred to the District of Utah.

Respectfully submitted,

CHARLES R. CAMBRA III, JONATHAN K. DRIGGS, AND WORKFORCE SOLUTIONS, INC.

By their attorneys

DATED:   January 24, 2005

 /s/ P. Andy Henderson, Jr.
Edward V. Colbert, III (BBO # 566187)
P. Andy Henderson, Jr. (BBO # 655891)
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, Massachusetts 02110-1112
(617) 951-2800

Erik A. Olson
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900

Salt Lake City, Utah 84111
(801) 415-3000